IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE REINFORCED EARTH COMPANY, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-2704-N |
| | § | |
| T&B STRUCTURAL SYSTEMS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses two motions: (1) Plaintiff The Reinforced Earth Company's ("RECO") motion to strike Defendant T&B Structural Systems's ("T&B") affirmative defenses and dismiss T&B's counterclaims [Doc. 38], and (2) RECO's motion to dismiss several of its own claims [50]. The Court denies RECO's motion to strike and dismiss, and the Court grants RECO's motion to dismiss its own claims.

## I. THE RECO-T&B PATENT DISPUTE AND THE ACTION'S PROCEDURAL POSTURE

RECO and T&B are engaged in a dispute about two patents: United States Patent Nos. 6,050,748 (the "'748 Patent") and 5,807,030 (the "'030 Patent"). Both patents are entitled "Stabilizing Elements for Mechanically Stabilized Earthen Structure." RECO's original complaint against T&B alleged infringement of the '748 Patent and sought damages and injunctive relief. RECO later amended its complaint, alleging infringement of the '030 Patent as well. T&B's answer to the amended complaint contains eight affirmative defenses:

noninfringement, patent invalidity, inequitable conduct, failure to state a claim upon which relief may be granted, patent misuse, laches, adequate remedy at law, and bad faith.  T&B also asserts four counterclaims against RECO: declaratory judgment of noninfringement, declaratory judgment of patent invalidity, inequitable conduct, and attorneys' fees and costs. RECO now moves to strike seven of T&B's affirmative defenses under Federal Rule of Civil Procedure 12(f) and to dismiss two of T&B's counterclaims under Rule 12(b)(6).

## II.  THE COURT DENIES RECO'S MOTION TO DISMISS T&B'S COUNTERCLAIMS

### A.  *Motion to Dismiss Standard*

When faced with a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories.  First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b) (6) dismissal proceeding."  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice

of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### B.  Inequitable Conduct

To succeed on a claim of inequitable conduct, a party must show that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the United States Patent and Trademark Office ("PTO").  *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc).  A party pleading inequitable conduct must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009).[1]  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  The *Exergen* court explained that, because it is subject to Rule 9(b), a pleading alleging inequitable conduct must "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.* at 1328.  The pleading may aver knowledge and intent generally, but it "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a

---

[1]Pleading is a procedural matter; however, because inequitable conduct is unique to patent law, the law of the Federal Circuit governs.  *See Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (citing *Intel Corp. v. Commonwealth Sci. & Indus. Research Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006)).

specific intent to deceive the PTO." *Id.* A reading of T&B's answer [26] shows that T&B has successfully pled a counterclaim for inequitable conduct.

  ***1. T&B Has Pled the "Who, What, When, Where, and How."*** – T&B has included in its answer the required specifics of the alleged material misrepresentation. As to "who," T&B asserts that Jon O. Nelson, "an attorney of record for the application[s] that matured into the" '748 and '030 Patents, committed the alleged misrepresentation. Answer ¶¶ 73, 122. Regarding "what," T&B charges that Nelson "misrepresented the assignee of the applications that matured into the" two patents at issue in the terminal disclaimers bearing on those patents. *Id.* ¶¶ 78, 148. Moreover, T&B has explained that this misrepresentation was material because it was necessary to overcome a previous double patenting rejection by the PTO. *Id.* ¶¶ 78, 128. According to T&B, the PTO would not have granted the '748 or '030 Patent if the applicants had not overcome the double patenting rejections. *Id.* ¶¶ 79, 129. The "where" was the '748 and '030 terminal disclaimers themselves, which Nelson filed with the PTO; the "when" was July 7, 1999 and September 26, 1997, the dates Nelson signed the disclaimers. *Id.* ¶¶ 84, 123–24. Finally, T&B has provided sufficient information as to "how." It alleges that Nelson represented to the PTO that Société Civile des Brevets Henri C. Vidal ("Vidal") was the assignee of 100% of the interest in the applications that matured into the '748 and '030 Patents, but that Nelson knew these representations were false. *Id.* ¶¶ 76–78, 123–25. In fact, T&B contends, the named inventors owned 100% of the interest in the applications that matured into the '748 and '030 Patents. *Id.* ¶¶ 77, 124.

***2.   T&B Has Sufficiently Pled Knowledge and Intent.*** – A party may allege knowledge and intent generally. FED. R. CIV. P. 9(b); *Exergen*, 575 F.3d at 1328. T&B alleges that Nelson "should have known" that Vidal was not the assignee of interest in the patents when he signed the terminal disclaimers. Answer ¶¶ 86, 136. It also alleges, "upon information and belief," that Nelson "may have had a specific intent to deceive the USPTO when he signed and submitted the" two terminal disclaimers. *Id.* ¶¶ 81, 137. Rule 9(b) permits pleading on information and belief "when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330–31. For the reasons discussed in the following subsection, T&B has pled sufficient specific facts to reasonably support its claim. T&B's allegations of knowledge and intent are thus sufficient under Rule 9(b) and Federal Circuit case law.

***3.   T&B Has Pled Adequately Specific Factual Information.*** – From the facts asserted in the Answer, the Court can reasonably conclude that Nelson knew the material misrepresentations were false and that he misrepresented this information with the specific intent to deceive the PTO. *See Exergen*, 575 F.3d at 1328. In its answer, T&B has set out, with supporting documentation, the timeline of assignments of interest in the applications that matured into the '748 Patent,[2] Answer ¶¶ 58–64 & Exs. E, F, and the '030 Patent. *Id.*

---

[2]RECO points to a publicly available document that, RECO alleges, is proof that the inventors assigned the parent application of the '748 Patent to Vidal in 1995, before the filing of the '748 terminal disclaimer. *See* Pl.'s Reply to Def.'s Resp. to Mot. Strike & Dismiss, Ex. A. It is true that a court may consider a publicly available document in deciding a motion to dismiss. *See Cinel*, 15 F.3d at 1343 n.6. This document, though, does not

¶¶ 109–113 & Exs. J, K.  Moreover, it has averred that "Vidal has never been the assignee of 100% interest in the application that matured into the '030 Patent."  *Id.* ¶ 115.  On these facts, the Court can reasonably infer that Nelson knew the alleged misrepresentations were false, particularly because, as T&B points out, he was an attorney of record for both applications.  *Id.* ¶¶ 73, 122.  Moreover, T&B has also asserted that, absent Nelson's alleged misrepresentations, the USPTO would not have granted the '748 Patent or the '030 Patent.  *Id.* ¶¶ 79–80, 127–28.  In *Exergen*, the court rejected a claim of inequitable conduct because the party making the claim alleged no facts to support an inference of scienter.  575 F.3d at 1330.  Here, by contrast, the Court can infer, based on the facts T&B has pled, that Nelson misrepresented the ownership of the interest in the application in with the specific intent to deceive the PTO so that the PTO would grant what became the '748 and '030 Patents.

In sum, the answer adequately asserts the elements of and underlying facts supporting a counterclaim of inequitable conduct.  The Court accordingly declines to dismiss this counterclaim.

### C.  Patent Invalidity

_____

conclusively prove that Vidal owned the interest in the application at the specific time that Nelson filed the '748 terminal disclaimer: it proves only that Vidal had the interest several years prior to the disclaimer's filing.  Vidal, for instance, may itself have assigned the interest before that filing.  Moreover, T&B has pointed to an assignment of the application that matured into the '748 Patent to Vidal dating from 1999, after the filing of the disclaimer.  *See* Answer, Ex. F.  It is not the Court's role at this stage of the litigation to weigh contrasting evidence; rather, the Court must determine only whether T&B has stated a plausible claim.  Based on the claims it asserts and the documentation supporting those assertions, the Court concludes that T&B has done so.

RECO next asserts that T&B's patent invalidity counterclaim fails under *Twombly* and *Iqbal*'s plausibility pleading standard. Specifically, it maintains that T&B has not pled sufficient facts to support a claim of invalidity. T&B's answer, however, specifically asserts that "the claims of the '748 and '030 Patents are invalid because the '748 and '030 Terminal Disclaimers were defective, and the '748 and '030 Patents would not have been 'allowed' but for the '748 and '030 Terminal Disclaimers." Answer ¶ 145. Moreover, as detailed above, the Answer contains a number of specific facts relating to T&B's assertion that the terminal disclaimers were defective. *See supra* section II.B.3 (citing specific paragraphs in answer). The Court presumes that these facts are true. *See Gines*, 699 F.3d at 816. In light of the facts asserted in the answer, the Court concludes that T&B has pled factual content allowing the reasonable inference that RECO is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. Consequently, T&B's claim for patent invalidity is sufficient under Rule 8(a), and the Court therefore does not dismiss it.

## III. THE COURT DENIES RECO'S MOTION TO STRIKE T&B'S AFFIRMATIVE DEFENSES

RECO moves the Court to strike seven of T&B's affirmative defenses pursuant to Rule 12(f), which allows a court to strike "insufficient defense[s]" from a pleading.[3] FED. R. CIV. P. 12(f). Courts disfavor Rule 12(f) motions and grant them only rarely. *See Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir.

---

[3]Specifically, RECO moves to strike the defenses of patent invalidity, inequitable conduct, failure to state a claim upon which relief may be granted, patent misuse, laches, adequate remedy at law, and bad faith. It does not move to strike the remaining defense, noninfringement.

1962) (noting that motion to strike "is a drastic remedy to be resorted to only when required for the purposes of justice" and "should be granted only when the pleading to be stricken has no possible relation to the controversy"); *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993) ("Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted.").

### A. Generally, the Court Reviews T&B's Affirmative Defenses Under the Fifth Circuit's "Fair Notice" Standard

As a general matter, Rule 8(b) and (c), rather than Rule 8(a), govern the pleading of affirmative defenses. The parties disagree, however, about the correct standard under which the Court should review T&B's defenses. T&B maintains that the Court should use the "fair notice" standard set out in *Woodfield v. Bowman*, 193 F.3d 354 (5th Cir. 1999). Under this standard, a defendant must "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Id.* at 362. A plaintiff has fair notice when the defendant "sufficiently articulate[s] the defense so that the plaintiff [is] not a victim of unfair surprise." *Home Ins. Co. v. Matthews*, 998 F.2d 305, 309 (5th Cir. 1993). A "fact-specific analysis" may be required to determine whether the pleadings set forth the "minimum particulars" required to ensure the plaintiff is not unfairly surprised, but simply pleading the name of the affirmative defense may be sufficient. *See Woodfield*, 193 F.3d at 362.

RECO, in contrast, argues that the more stringent *Twombly/Iqbal* plausibility pleading standard should apply to affirmative defenses. Courts across the country disagree on this

point, which the Supreme Court has not addressed.  *See* 5 CHARLES ALAN WRIGHT &
ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1274 (3d ed. Supp. 2012)
(collecting cases).  The Fifth Circuit has likewise  not ruled on the matter, and courts in this
District are split on the issue.  *Compare Willins v. Credit Solutions of Am., Inc.*, No.
3:09-CV-1025-M, 2010 WL 624899, at *1 (N.D. Tex. Feb. 23, 2010) *and T-Mobile USA,
Inc. v. Wireless Exclusive USA, LLC*, No. 3:08-CV-0340-G, 2008 WL 2600016, at *2 (N.D.
Tex. July 1, 2008) (applying plausibility pleading standard to affirmative defenses) *with
S.E.C. v. Cuban*, 798 F. Supp. 2d 783, 795 n.13 (N.D. Tex. 2011) *and Jones v. JGC Dallas
LLC*, No. 3:11-CV-2743-O, 2012 WL 4119570, at *4 (N.D. Tex. Aug. 17, 2012), *report and
recommendation adopted*, 3:11-CV-2743-O, 2012 WL 4169685 (N.D. Tex. Sept. 19, 2012)
(refusing to apply plausibility pleading standard).  The majority rule appears to be that
*Twombly* and *Iqbal* do apply, but a significant number of courts have adopted the opposing
position.  *See* Melanie A. Goff & Richard A. Bales, *A "Plausible" Defense: Applying*
Twombly *and* Iqbal *to Affirmative Defenses*, 34 AM. J. TRIAL ADVOC. 603, 623 (2011)
(collecting cases).

    This Court is persuaded that the minority view that the *Twombly/Iqbal* standard does
not apply to affirmative defenses is correct.  Courts adopting the majority position generally
argue that defendants should be held to the same standard as plaintiffs – that "sauce for the
goose is sauce for the gander."  *Kaufmann v. Prudential Ins. Co. of Am.*, Civ. A. No.
09-10239-RGS, 2009 WL 2449872, at *1 (D. Mass. Aug. 6, 2009); *see also, e.g.*, *Bradshaw
v. Hilco Receivables, LLC*, 725 F. Supp. 2d 532, 536 (D. Md. 2010) ("[T]he interests of

consistency and fairness are furthered by holding defendants to the plausibility standard"). Regardless of the desirability, as a policy matter, of holding plaintiffs and defendants to the same standard, the Court concludes that the plain text of Rule 8 does not establish this state of affairs.  In *Twombly* and *Iqbal*, the Supreme Court was interpreting Rule 8(a), specifically the requirement that a pleading must contain "a short and plain statement of the claim *showing that the pleader is entitled to relief*."  FED. R. CIV. P. 8(a)(2) (emphasis added).  The Court in *Twombly* based its plausibility pleading standard on the final clause of Rule 8(a)(2): it observed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555.  The Court went on to note that "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at n.3.  *Twombly* and *Iqbal*, in sum, are grounded in the language of Rule 8(a), and particularly Rule 8(a)(2).

Rule 8(b)(1) and (c)(1), which govern affirmative defenses, set out different pleading requirements than does Rule 8(a).  Rule 8(b)(1) requires only that a party responding to a pleading "state in short and plain terms its defenses to each claim asserted against it."  FED. R. CIV. P. 8(b)(1)(A).  In similarly broad terms, Rule 8(c)(1) mandates that, "[i]n responding to a pleading, a party must affirmatively state any . . . affirmative defense."  FED. R. CIV. P. 8(c)(1).  Critically, neither of these sections of Rule 8 requires a "showing," either that the pleader is entitled to relief or of any other matter.  The canon of construction holding that *expressio unius est exlusio alterius* ("the expression of one thing is the exclusion of another")

applies to the Federal Rules of Civil Procedure as well as to statutes. *See, e.g.*, *Leatherman v. Tarrant Cnty.*, 507 U.S. 163, 168 (1993) (indicating that *expressio unius* canon prevents courts from expanding Rule 9(b)'s pleading requirements to causes of action not listed in text of rule). Had Rule 8's drafters wanted to require defendants to provide a showing of entitlement to relief in pleading affirmative defenses, they could easily have done so. The Court must apply the Rules as written and hold parties only to the standards those Rules set out.[4] *Accord, e.g.*, *E.E.O.C. v. Joe Ryan Enters., Inc.*, 281 F.R.D. 660, 662–63 (M.D. Ala. 2012); *Vurimindi v. Fuqua Sch. of Bus.*, Civ. A. No. 10-234, 2011 WL 3803668, at *2–3 (E.D. Pa. Aug. 29, 2011); *Charleswell v. Chase Manhattan Bank, N.A.*, Civ. A. No. 01-119, 2009 WL 4981730, at *4 (D.V.I. Dec. 8, 2009).

It is true, as RECO notes, that the Fifth Circuit has stated that "[a]n affirmative defense is subject to the same pleading requirements as is the complaint." *Woodfield*, 193 F.3d at 362. *Woodfield*, however, dates from before *Twombly* and *Iqbal*, at which point the two standards clearly did not differ. It is not clear, however, that the Fifth Circuit's observation still applies given the changes the latter two cases have wrought and the specific language of Rule 8 analyzed above. *Accord E.E.O.C. v. Courtesy Bldg. Servs., Inc.*, No. 3:10-CV-1911-D, 2011 WL 208408, at *2 (N.D. Tex. Jan. 21, 2011). This uncertainty is

---

[4]The Court thus respectfully disagrees with courts that have concluded that the text of Rule 8(a) is similar enough to the text of Rule 8(b) and (c) to justify applying the *Twombly*/*Iqbal* standard to affirmative defenses. *E.g.*, *Bradshaw*, 725 F. Supp. 2d at 536; *HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 691 (N.D. Ohio 2010) ("While the language in Civil Rule 8(a) differs from the language in Civil Rule 8(b) & (c), this difference is minimal and simply reflects the fact that an answer is a response to a complaint.").

particularly true given that "[i]t appears that the textual core of the *Twombly* decision, namely its focus on the sufficiency of a complaint's factual 'showing,' is the first time the Court emphasized that word in Rule 8 in considering a motion to dismiss." Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 DUKE L.J. 1, 130 n.79 (2010). Because *Twombly* and *Iqbal* emphasized the word "showing" for the first time, and because that word is not present in Rule 8(b) or (c), the Court concludes that the Fifth Circuit's pre-*Twombly* statement that affirmative defenses are subject to the same pleading requirements as complaints no longer holds. Accordingly, the Court reviews T&B's affirmative defenses under the "fair notice" standard.[5] *See Woodfield*, 193 F.3d at 362.

Applying *Woodfield*'s "fair notice" standard to this case, the Court concludes that T&B has pled the "minimum particulars" necessary to ensure that its affirmative defenses do not unfairly surprise RECO. RECO's argument regarding T&B's affirmative defenses of patent invalidity, failure to state a claim upon which relief may be granted, laches, adequate remedy at law, and bad faith is that T&B has not pled them so as to meet the *Twombly/Iqbal* plausibility pleading standard. It offers specific arguments to strike two other defenses, which the Court addresses below.

---

[5]RECO also apparently seeks, as a general matter, to have the Court review T&B's affirmative defenses under Rule 8(a), whether or not the Court applies *Twombly* and *Iqbal* to the defenses. *E.g.*, Pl.'s Br. Supp. Mot. Strike & Dismiss 8–12. Rule 8(a), however, governs *claims*. As discussed above, Rule 8(b) and (c) govern affirmative defenses and provide the basis for reviewing T&B's defenses.

As to the five defenses that RECO asserts do not comply with *Twombly* and *Iqbal*, it is true that, in some instances, T&B has provided little more than the names of the defenses it pleads; however, such pleading is not necessarily cause for striking a defense. *See Woodfield*, 193 F.3d at 362 ("[I]n some cases, merely pleading the name of the affirmative defense . . . may be sufficient."); FED. R. CIV. P. 8(b)(1) (requiring only that "a party must . . . state in short and plain terms its defenses to each claim asserted against it"). On the facts of this case, the Court concludes that, though the question is close in some instances, T&B has pled its defenses adequately. T&B's answer is thirty-five pages long and provides a significant amount of background material concerning its counterclaims and affirmative defenses. Though length itself is not proof of adequate pleading, the material in the answer, along with the affirmative defenses T&B sets out, is sufficient to ensure that RECO will not be the victim of unfair surprise. The Court thus denies RECO's motion to strike T&B's affirmative defenses of patent invalidity, failure to state a claim upon which relief may be granted, laches, adequate remedy at law, and bad faith.

### B.  T&B's Inequitable Conduct Defense Is Sufficient Under Rule 9(b)

The Court reviews T&B's inequitable conduct defense – like its related counterclaim – under Rule 9(b)'s heightened pleading standard. *See Exergen*, 575 F.3d at 1326–27. Because the standard of review is the same for the defense and the counterclaim, T&B's inequitable conduct defense is sufficient to withstand RECO's Rule 12(f) motion to strike for the same reason T&B's inequitable conduct counterclaim is sufficient to withstand

RECO's Rule 12(b)(6) motion to dismiss.   *See supra* section II.B.   The Court accordingly

declines to strike this defense.

### C. T&B Has Sufficiently Pled an Affirmative Defense of Patent Misuse

"The doctrine of patent misuse is . . . grounded in the policy-based desire to 'prevent

a patentee from using the patent to obtain market benefit beyond that which inheres in the

statutory patent right.'"   *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir.

2010) (quoting *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir. 1992)).

"[T]he key inquiry under the patent misuse doctrine is whether . . . the patentee has

impermissibly broadened the physical or temporal scope of the patent grant and has done so

in a manner that has anticompetitive effects."   *Id.*   RECO asserts that the Court should hold

T&B to Rule 9(b)'s heightened pleading standard as to this defense "[b]ecause patent misuse

invokes an accusation of culpability on behalf of the patentee on par with inequitable

conduct."   Pl.'s Br. Supp. Mot. Strike & Dismiss 6.   The Federal Circuit has not, to the

Court's knowledge, addressed this question.   Moreover, it is not clear that, as a general

matter, a defense of patent misuse sounds in fraud.   *Accord Bayer CropScience AG v. Dow*

*AgroSciences LLC*, Civ. A. No. 10-1045 RMB/JS, 2011 WL 6934557, at *4 (D. Del. Dec.

30, 2011); *Takeda Chem. Indus, Ltd. v. Alphapharm Pty., Ltd.*, No. 04 Civ. 1966 (DLC),

2004 WL 1872707, at *1 (S.D.N.Y. Aug. 19, 2004) (declining to decide question).   Several

district courts across the country, however, have concluded that, in the words of one of them,

"to the extent a patent misuse claim rests on allegations of inequitable conduct, that claim

must be pleaded with particularity under Rule 9(b)."   *VDF FutureCeuticals, Inc. v. Sandwich*

*Isles Trading Co.*, No. Civ. 11-00288 ACK, 2011 WL 6820122, at *7 (D. Haw. Dec. 27, 2011) (citing *Appelera Corp. v. Mich. Diagnostics, LLC*, 594 F. Supp. 2d 150, 163–64 (D. Mass. 2009); *United Fixtures Co. v. Base Mfg.*, No. 6:08-cv-506-Orl-28GJK, 2008 WL 4550212, at *2–5 (M.D. Fla. Oct. 8, 2008); *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, No. C-95-3577 DLJ, 1996 WL 467293, at *13 (N.D. Cal. July 24, 1996)).

The Court need not decide whether Rule 9(b) applies to the extent that T&B's patent misuse defense rests on allegations of inequitable conduct because, regardless of whether it does or not, T&B's claim is sufficient.  As described above, T&B's inequitable conduct counterclaim and affirmative defense are sufficient under Rule 9(b).  To the extent that T&B's affirmative defense of patent misuse rests on its allegations of inequitable conduct, then, the defense is also sufficient under Rule 9(b).  *See supra* sections II.B, III.B.  If Rule 9(b) does not apply, T&B need only comply with the Fifth Circuit's "fair notice" test. Though T&B sets out this defense only briefly, the defense is sufficient to put RECO on notice of the defense and to prevent RECO from being unfairly surprised.  Accordingly, the Court declines to strike T&B's affirmative defense of patent misuse.

In conclusion, T&B has sufficiently pled all seven of the affirmative defenses that RECO seeks to strike.  In most cases, T&B need only plead these defenses so as to comply with Rule 8(b) and 8(c) as applied in the Fifth Circuit's "fair notice" standard.  Rule 9(b), however, governs T&B's inequitable conduct defense and possibly its patent misuse defense to a limited extent.  In all cases, T&B has laid out its defenses as required by the relevant standard.

## IV.  THE COURT GRANTS RECO'S MOTION
## TO DISMISS ITS OWN CLAIMS

Finally, RECO moves to dismiss its own claims related to the '030 Patent without prejudice.  Specifically, RECO moves to dismiss Counts Five through Eight in its amended complaint and seeks to refile these claims to correct a recently discovered mistake in the chain of title of the '030 Patent.  T&B, as it has not responded, is apparently unopposed to the relief RECO seeks.  The Court grants the motion and dismisses the claims without prejudice.

### CONCLUSION

The Court denies RECO's motion to strike T&B's  affirmative defenses and dismiss T&B's counterclaims.  The Court grants RECO's motion to dismiss its infringement claims relating to the '030 patent.  Accordingly, the Court dismisses Counts Five through Eight of RECO's amended complaint without prejudice.


Signed January 30, 2013.


David C. Godbey
United States District Judge